## NEW YORK SUPERIOR COURT.

### Balcom agt. Julien and others.

A court of equity will not lend its aid to restrain by *injunction* the commission of any act injurious to the plaintiff, where compensation in damages can be recovered at law.

Where the plaintiff and one of the defendants entered into a contract by which the former was authorized to take possession of a certain hotel and furniture, and conduct the business for the joint profit of the parties; for which he was to receive as compensation one-third of the net profits—the *title* to all the property, both that then in the hotel, as well as that which might be afterwards purchased, belonging absolutely to the defendant, with an election to the plaintiff, after June, 1865, to terminate the agreement, when he was to have one-third of such property as might have been purchased and paid for from and out of the receipts of said business,

*Held,* that the plaintiff was not entitled to an *injunction to stay the foreclosure and sale of two mortgages* given upon said property by the defendant prior to the agreement with the plaintiff. As respected all the property covered by the two mortgages, except such as might have been purchased out of the profits of the business since the agreement, the plaintiff clearly had no claim. And his interest in, or claimed ownership of the subsequently acquired property, was of too remote, doubtful and uncertain a character to enable him to receive the aid of the court in his behalf.

*Special Term, January,* 1862.

MONELL, Justice.   In April, 1858, the defendant Julien sold and conveyed to Peter Degive, the lease and furniture of the St. Denis hotel in the city of New York, and took from Degive a mortgage upon the lease and furniture to secure a part of the purchase money.   Degive took possession of the hotel and furniture and in May, 1860, sold and conveyed to the defendant Thomas E. Stewart, the lease and furniture, subject to the mortgage.   In a contract between Julien and Degive, made prior to the sale in April, 1858, and which provided for the sale and transfer of the lease and furniture and the giving of the mortgage, it was agreed that if any of the furniture to be mortgaged should be removed, and new or other property substituted in its place, that the lien of the mortgage should continue upon the substituted property as if the same had formed a part of the mortgaged property.   On the 19th of June, 1861, the defendant Stewart executed to the defendant Julien a mortgage, reciting the mortgage from Degive to Julien, and declaring that it was intended by said mortgage to extend its lien to after-acquired property, and covering other furniture not included in the first mortgage.   This second mortgage was collateral to the first, which had been assumed by the defendant Stewart.   Previous to the execution of the second mortgage, and in May, 1860, the defendant Stewart entered into an agreement with the plaintiff, whereby it was agreed that the plaintiff should, from the 1st of June thereafter, have the exclusive control and management of the hotel business on the terms and conditions therein specified, and for that purpose should have control and possession, during the existence of the agreement, of all the parts or portions of the premises appropriated to the business.   After detailing the manner in which the business is to be conducted by the plaintiff, the agreement provides that the plaintiff, as " manager and conductor of the business," shall receive, by way of " compensation therefor," in lieu of all other personal claims, one-third of the net profits of the hotel busi-

ness, to be ascertained and accounted for during the continuance of the agreement. On the termination of the agreement, all the property and leases were to belong absolutely to the defendant Stewart, subject to a right of election in the plaintiff as to part of the furniture. It was further agreed, that if the plaintiff should, after the 1st of June, 1865, elect to terminate the agreement, he should be entitled to one-third " of all the household furniture, china or glassware, wines, stores or other property which shall have been purchased and paid for from and out of the receipts of · said business." It was further provided that with the profits of the business should be purchased such new and additional furniture as might be needed for properly conducting the business, and to replace such as might be worn out.

It is alleged in the complaint, that between June, 1860, and June, 1861, the plaintiff has expended in new furniture the sum of $10,000. This allegation is controverted in the answer of the defendant Julien, as are all the allegations of fraud and collusion with the defendant Stewart. An injunction was obtained restraining the defendant Julien from foreclosing his mortgages, or removing or interfering with the property covered by his mortgages. A motion is now made to dissolve the injunction.

The conclusion to which I have arrived upon the merits of this motion, renders it unnecessary for me to examine the two preliminary objections taken by the counsel for the defendant Julien.

It is difficult to perceive upon what principle, under the facts of this case, the plaintiff can invoke the aid or protection of this court.

He is not a creditor of the mortgagor, nor can I, upon a careful reading of the agreement between the plaintiff and the defendant Stewart, perceive that he is a purchaser. The mortgages to Julien, if void for any reason, are only so at the instance of a creditor of, or a *bona fide* purchaser

from, the mortgagor. As respects all the property covered by the two mortgages, except such as may have been purchased out of the profits of the business since June, 1860, the plaintiff clearly has no claim. He is not in an attitude where he can question the validity of the mortgages as regards that property; and his interest in, or claimed ownership of the subsequently acquired property, is of too remote, doubtful and uncertain a character to enable him to receive the aid of the court in his behalf.

As I read the contract between the plaintiff and Stewart, the former was authorized to take possession of the hotel and furniture, and conduct the business for the joint profit of the parties; for which he was to receive as compensation one-third of the net profits. The title to all the property, both that then in the hotel, as well as that which might be afterwards purchased, belonged absolutely to Stewart. He did not part nor intend to part with any portion of it, and the agreement is carefully worded to secure to him the absolute and unqualified ownership. It was only upon the happening of a remote and possible contingency that the plaintiff was to have any right to any part of it, namely, his election after June, 1865, to terminate the agreement, when he was to have one-third of such property as might have been purchased. Until such election, which cannot be made until after June, 1865, Stewart continues, by the very terms of the agreement, the owner of the property; and I do not doubt, he can at pleasure sell, dispose of, or mortgage it at pleasure, or render it subject to his debts. Should he thus dispose of it, or should it be seized and sold by his creditors, doubtless he would be answerable in damages to the plaintiff, if he should avail himself of his right of election; but the title of the purchaser would not be affected. But if it should be admitted that the plaintiff had a present interest in the property included in the last mortgage, or in any part of it, it was only to the extent of an undivided third, and the mortgage

as to the remaining two-thirds owned by Stewart would be valid, and the mortgagee would have the right to sell the interest of Stewart, and the purchaser would become co-owner with the plaintiff.

It is a well settled principle that a court of equity will not lend its aid to restrain by injunction the commission of any act, injurious to the plaintiff, where compensation in damages can be recovered at law.

In this case, for any injury the plaintiff may sustain, he has an adequate remedy at law. If, after June, 1865, he acquire a right to any portion of the property, and he shall have been deprived of it by the act of Stewart, or even of Julien, he can resort to his action for damages; or if by reason of the property now being sold on a foreclosure of the mortgage, the plaintiff is thereby deprived of the means of conducting the business, he must look to Stewart upon the covenants in his agreement.

I lay out of view the alleged agreement between Stewart and Julien, to the effect that upon Stewart paying $25 a week, Julien would not foreclose the mortgage. This agreement is personal to Stewart, and cannot inure to the benefit of the plaintiff.

The injunction must be dissolved, with costs.